UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSEPH IPPOLITO,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____



**DECISION AND ORDER**

1:18-CV-00403 EAW

## INTRODUCTION

Represented by counsel, Plaintiff Joseph Ippolito ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 7; Dkt. 10). For the reasons discussed below, Plaintiff's motion (Dkt. 7) is granted in part, the Commissioner's motion (Dkt. 10) is denied, and the matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

## BACKGROUND

Plaintiff protectively filed his application for DIB on May 6, 2015. (Dkt. 6 at 20).[1] In his application, Plaintiff alleged disability beginning March 26, 2015, due to chronic neck pain, severe headaches, a right shoulder injury, and a left ankle injury. (*Id.* at 188, 191). Plaintiff's application was initially denied on July 1, 2015. (*Id.* at 84-95). At Plaintiff's request, a video conference hearing was held before administrative law judge ("ALJ") Paul Greenberg on June 5, 2017, with Plaintiff appearing in Buffalo, New York, and the ALJ presiding from Falls Church, Virginia. (*Id.* at 38-74, 96). At the hearing, Plaintiff amended his alleged onset date to February 24, 2014. (*Id.* at 23). On August 14, 2017, the ALJ issued an unfavorable decision. (*Id.* at 20-37). Plaintiff requested Appeals Council review; his request was denied on February 1, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through December 31, 2019. (Dkt. 6 at 25). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since February 24, 2014, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease, dysfunction of a major joint (right shoulder), and headaches. (*Id.* at 26). The ALJ further found that Plaintiff's medically determinable impairment of ankle dysfunction was non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 1.02 and 1.04 in reaching his conclusion. (*Id.* at 26-27).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the additional limitations that Plaintiff:

> Can perform frequent reaching (bilateral) and frequent handling and fingering with the dominant right hand. He cannot climb ladders, ropes, or scaffolds. [Plaintiff] must be able to sit for five minutes after standing for 25 minutes, or stand for five minutes after sitting for 25 minutes, but he can continue working in either position. [Plaintiff] must avoid concentrated exposure to work around unprotected heights and moving mechanical parts. He cannot operate motorized equipment as part of the job.

(*Id.* at 27). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 30).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of sorter, packer, and cleaner. (*Id.* at 30-31). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act at any time from the alleged onset date through the date of the ALJ's decision. (*Id.* at 31-32).

## II. Remand of this Matter for Further Proceedings is Necessary

Plaintiff asks the Court to reverse or, in the alterative, remand this matter to the Commissioner, arguing that: (1) the ALJ's RFC finding that Plaintiff could perform frequent bilateral reaching and frequent handling and fingering with the dominant right hand was unsupported by substantial evidence; (2) the ALJ erred in failing to include any limitations in the RFC determination attributable to Plaintiff's severe impairment of headaches; and (3) the ALJ's RFC finding was unsupported by substantial evidence because the ALJ substituted his own judgment for competent medical opinion. (Dkt. 7-1 at 21-28). For the reasons discussed below, the Court agrees with Plaintiff that the ALJ failed to rely on competent medical opinion in formulating his RFC finding and that this error necessitates remand.

A.  **Failure to Rely on Competent Medical Opinion**

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted). In other words:

> An ALJ is prohibited from 'playing doctor' in the sense that 'an ALJ may not substitute his own judgment for competent medical opinion. . . . This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (citations omitted). "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Here, the sole medical opinion of record to assess Plaintiff's RFC was issued by consultative examiner Dr. John Schwab on June 23, 2015. (Dkt. 6 at 481-84). Dr. Schwab performed a physical examination of Plaintiff and diagnosed him with neck pain, headache,

right shoulder pain, left ankle pain, and tobacco abuse, but ultimately concluded that Plaintiff's impairments did not result in any activity restrictions. (*Id.*).

In his decision, the ALJ noted that Dr. Schwab was "a non-treating source who based his assessments on a single examination," and, "[i]n light of the medical evidence . . . showing substantial ongoing medical treatment for the claimant's impairments," concluded that "Dr. Schwab's evaluation understates the severity of [Plaintiff's] conditions." (Dkt. 6 at 30). The ALJ stated that he gave Dr. Schwab's opinion "partial weight," but failed to specify further what portions of Dr. Schwab's opinion in particular he credited. (*See id.*). Moreover, the ALJ's ultimate RFC finding bears no clear relation to Dr. Schwab's opinion. The ALJ also did not rely on any other medical opinion in fashioning the specific limitations set forth in his RFC finding, but instead asserted that his assessment of Plaintiff's RFC was based on "objective medical imaging, conservative and surgical intervention, variable clinical signs from treating providers," and Plaintiff's activities of daily living. (*Id.*).

The Court finds that the ALJ erred in formulating a highly specific RFC finding for Plaintiff without reference to any competent medical opinion. Dr. Schwab's opinion does not constitute substantial evidence for the ALJ's findings, inasmuch as the ALJ expressly stated that he found Dr. Schwab's opinion to understate the severity of Plaintiff's impairments, and Dr. Schwab offered no opinion on the particular limitations assessed by the ALJ. *See Skupien v. Colvin*, No. 13-CV-403S, 2014 WL 3533425, at *4 (W.D.N.Y. July 16, 2014) (explaining that a "no restrictions" opinion is inconsistent with a conclusion that the claimant can perform only a limited range of light work). Nor is there any other

medical opinion in the record that correlates to or supports the restrictions included in the RFC finding. In other words, while "the ALJ's RFC finding does not need to track any single medical opinion," this is a case where "there is no medical opinion at all supporting the ALJ's finding." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016); *see also Sheri S. v. Berryhill*, No. 3:18-CV-192 (DJS), 2019 WL 1429522, at *4 (N.D.N.Y. Mar. 29, 2019) ("By assigning such a specific limitation that is not consistent with any supporting medical opinion, the ALJ improperly substituted her opinion for that of a valid medical opinion.").

Moreover, the ALJ erred to the extent that he crafted his specific RFC findings based on his own interpretation of the imaging and clinical records. "As a lay person, an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings. . . ." *Fioretti v. Colvin*, No. 1:15-CV-00143(MAT), 2017 WL 4053822, at *6 (W.D.N.Y. Sept. 13, 2017) (quotation omitted). This is not a case in which Plaintiff's "impairments are relatively simple and mild," such that the ALJ was permitted to "render a common sense judgment about functional capacity even without a physician's assessment." *Sheri S.*, 2019 WL 1429522, at *4 (quotation omitted). To the contrary, the medical record in this case demonstrates that Plaintiff had impairments that had required him to undergo multiple surgeries, including ankle surgery in January 2015, an anterior cervical discectomy in February 2014, shoulder surgery in April 2014, and a second shoulder surgery in September 2014. (*See* Dkt. 6 at 28-29). Plaintiff was also noted to suffer from headaches so severe that they would cause him to vomit. (*See id.* at 313). Under these circumstances,

the Court cannot conclude that Plaintiff's impairments were so mild as to permit the ALJ to assess his RFC without the benefit of a competent medical opinion.

Defendant cites three unpublished Second Circuit decisions for the proposition that it was appropriate for the ALJ to make an RFC determination that was not based "on any specific medical opinion": *Wright v. Berryhill*, 687 F. App'x 45 (2d Cir. April 14, 2017); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5 (2d Cir. Jan. 8, 2017); and *Johnson v. Colvin*, 669 F. App'x 44 (2d Cir. Sept. 29, 2016).[2] (*See* Dkt. 10-1 at 23). These cases are inapposite. In *Wright*, unlike in this case, the ALJ afforded "great weight" to the opinion of the plaintiff's treating physician, and "the ALJ's RFC determination (light work with some restrictions) incorporated the[] limitations" identified by that physician. 678 F. App'x at 47-48. The ALJ in *Wright* also gave great weight to the opinion of the consultative examiner. *Id.* *Wright* is thus very different from this case, where there was no opinion from a treating physician, and the ALJ essentially rejected the only medical opinion of record.

In *Monroe*, while the ALJ did ultimately reject the treating physician's medical assessment, he relied upon the treating physician's contemporaneous treatment notes that "provide[d] contemporaneous medical assessments of [the plaintiff's] mood, energy, affect, and other characteristics relevant to her ability to perform sustained gainful activity." 676 F. App'x at 8-9. However, in this case, the ALJ acknowledged that the

---

[2] *Johnson* is mis-cited in Defendant's brief as appearing at 69 F. App'x 44. (*See* Dkt. 10-1 at 23).

contemporaneous reports from Plaintiff's treating physicians were "mixed." (Dkt. 6 at 29). In other words, in this case, unlike in *Monroe*, the treatment records were not so clear that a layperson could assess them without the assistance of competent medical personnel.

Finally, in *Johnson*, the ALJ did not rely solely upon his own assessment of the medical evidence in determining the plaintiff's RFC, but also relied upon a letter from the plaintiff's physician discussing the plaintiff's limitations before and after surgery. 669 F. App'x at 46. The *Johnson* court specifically found that this letter, considered in combination with the other evidence of record, meant that the ALJ had not impermissibly used his own medical judgment in reaching his RFC determination. *Id.*

In sum, the ALJ in this case found that the only medical opinion of record understated the severity of Plaintiff's impairments. Then, instead of seeking out additional medical opinion (whether from a treating physician or based on an updated consultative examination), he relied upon his own assessment of bare medical findings such as imagining results and clinical observations to make a highly specific RFC determination. The Court finds that this was error, and that it resulted in an RFC finding not supported by substantial evidence. Accordingly, remand of this matter for additional proceedings is required.

### B. Plaintiff's Remaining Arguments

As set forth above, Plaintiff has identified additional reasons why he contends the ALJ's findings in this case were unsupported by substantial evidence. However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these

issues. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13 CIV. 06844 LGS DF, 2015 WL 2137776, at *28 (S.D.N.Y. May 4, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand").

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 7) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: August 19, 2019
      Rochester, New York